UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

VAUGHN E.[1],                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )     CIVIL NO. 1:21cv26
                                       )
KILOLO KIJAKAZI, Acting                )
Commissioner of Social Security,       )
                                       )
          Defendant.                   )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 423(a), and Supplemental Security Income (SSI) under Title XVI of the Act. 42 U.S.C § 1383(c).  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

_____

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant met the insured status requirements of the Social Security Act through December 31, 2019.

2.      The claimant has not engaged in substantial gainful activity since July 23, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: degenerative disc disease of the thoracic and lumbar spine; T12-L1 disc bulge; status post fusion of L4-L5; laminectomy of L3-L5; and discectomy of L5-S1 (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk for two hours and sit for six hours out of an eight-hour workday; can occasionally climb stairs or ramps, balance, stoop, kneel, or crouch; and can never climb ladders, ropes or scaffolds or crawl.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on September 6, 1972 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

3

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr.17 -25).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on August 20, 2021.  On November 10, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on November 18, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present

4

case, Step 5 was the determinative inquiry.

On December 31, 2018 Plaintiff filed an application for a period of disability and DIB, as well as for SSI. He alleged disability beginning July 23, 2018, due to problems with a pinched nerve and bulging discs in the lower back, degenerative disc disease, and rheumatoid arthritis. After denials at the initial and reconsideration levels, Plaintiff filed a request for a hearing before an ALJ. A telephone hearing was held on April 14, 2020, by ALJ Kathleen Winters. On April 23, 2020, the ALJ issued a decision denying benefits. On November 23, 2020, the Appeals Council denied the request for review and upheld the ALJ's decision.

Plaintiff was 45 years old as of the alleged onset date. He has a high school education. He has past relevant work as a salvage laborer, injection mold machine operator, and boat outfitter. On the alleged onset date Plaintiff went to the emergency room for lumbar and left sciatic pain. (Tr. 345). He has a history of chronic back problems and has had multiple episodes of sciatic nerve pain. *Id*. He had been using Flexeril and Naprosyn for the pain, and was using crutches because it hurt when he walked. *Id*. The pain was sharp, 9/10 in severity, and radiated to his left lower extremity. *Id*. Exacerbating factors included movement and bending over, relieving factors included analgesics. *Id*. On examination there was decreased range in the lumbar spine and moderate tenderness in the left lateral lumbar. (Tr. 347). Two days later, Plaintiff returned to the ER with worsening severe pain in his lower back and down the left leg. (Tr. 351). On examination he was tender over the lumbar area with palpation and there was minimal sacroiliac tenderness bilaterally. *Id*. A lumbar CT revealed bilateral pars defects at L4 with grade 1 anterolisthesis of L4 on L5; diffuse disc bulge at this level resulting in mild narrowing of the central canal and severe bilateral neuroforaminal stenosis, greater on the left than on the right.

5

(Tr. 352). Plaintiff was diagnosed with pars defect, spondylolisthesis, and radicular leg pain and prescribed hydrocodone for pain. *Id*.

Plaintiff established treatment with Dr. Renfroe as his new primary care physician. (Tr. 448). He reported being unable to mow the yard, he had difficulty with dressing, is unable to bend forward, has slow movement, and is unable to stand or sit for long periods of time. *Id*. He was most comfortable when lying on the couch, with the back of the couch supporting his back. *Id*. He has numbness and tingling in his left leg, leg spasms, and needs support for standing. *Id*. A lumbar spine x-ray revealed degenerative spondylosis and suspected pars defect at L4 with grade 1 spondylolisthesis. (Tr. 367).

Plaintiff was seen for a physical therapy (PT) initial evaluation. (Tr. 362). He presented with chronic low back pain along with difficulty sitting, bending forward, walking, and holding his children. *Id*. He also reports having tingling and numbness going down his bilateral lower extremities, left worse than right. *Id*. On examination he had paraspinal tenderness over the lower lumbar and sacral region; his flexibility was impaired in the hip flexors and gastro-soleus; and he had reduced strength in the bilateral hips, knees, and ankles, worse on the left than right. (Tr. 363). He had hyper reflexes in the bilateral knees and ankles. (Tr. 364). He walked with an antalgic gait, uneven cadence, decreased weight-bearing on the left, decreased stride length on the right, and lateral trunk lean to the right. *Id*. Plaintiff attended eight sessions of PT for his back. (Tr. 360). He reported that traction did help his mid-back, but his low back was still painful with 9/10 severity and continuous tightness. *Id*. He was discharged from PT to return to his doctor for further work-up. *Id*. He saw Dr. Renfroe reporting PT helped his middle back, but he had no relief in his lower back. (Tr. 441). He had difficulty with walking, sitting, and lying. *Id*. He was given a

referral to neurosurgery. (Tr. 442).

Plaintiff saw Dr. Phookan for evaluation of his chronic low back pain. (Tr. 396). His pain had gradually worsened, especially since the alleged onset date. *Id*. The pain was in the midline lumbosacral region and radiated to the left and down the left leg laterally. *Id*. The pain radiated all the way to his foot and was associated with tingling and numbness. *Id*. His pain was worsened with activity including walking and standing. *Id*.  Plaintiff took Flexeril and ibuprofen, and had undergone six weeks of PT. *Id*. He had previously undergone anterior cervical fusion and shoulder surgery. *Id*. He walked with an antalgic gait. *Id*. MRI of the lumbar spine showed moderate central stenosis at L3-4; diffuse disc bulge and moderate central stenosis at L4-5; grade 1 spondylolisthesis; and left paracentral disc herniation at L5-S1. (Tr. 397). As he had failed conservative management, surgical intervention was recommended. *Id*.

Plaintiff attended a consultative examination by an Agency examiner. (Tr. 380). He reported his sitting is limited to a few minutes, and standing and walking is limited requiring frequent position changes and use of a cane/walker. *Id*. He reported left lower extremity pain as well as numbness/tingling. *Id*. He has muscle spasms frequently causing falls and/or inability to move. *Id*. Physical examination was normal except he required assistance on to and off the scale; he required assistance with shoes; he had to use a cane and assistance of another person to get on/off the exam table; and he turned his full body due to neck pain and stiffness. (Tr. 381). He had been using a cane/walker since the alleged onset date that was prescribed by his doctor due to falls and instability. *Id*. Without an assistive device he had an antalgic gait, unsteady, sustained gait, normal station, and was unable to perform maneuvers. *Id*. With his cane he still had an antalgic gait, unsteady, non-sustained, and wide-base station. *Id*. He was dependent on the cane,

7

and had white knuckles from pressure. *Id*. He was able to squat a quarter of the way only with the cane. *Id*. With a walker he was steady, sustained, and had normal station. *Id*. He was able to stand on toe/heel on the right, able to tandem walk, and squat half way. *Id*. It was determined a walker was medically necessary for mobility. *Id*. His left lower extremity is one inch shorter than the right. *Id*. He had tremors at rest which increased with activity, as well as spasticity. *Id*. He had reduced range of motion throughout the cervical spine with flexion, extension, bilateral lateral flexion and bilateral rotation; the lumbar spine with forward flexion, extension, and bilateral lateral flexion; and in the left shoulder with abduction, adduction, forward elevation, and external rotation. (Tr. 379). The examiner found that Plaintiff was able to sit non-prolonged; able to walk and stand thirty minutes with assistance; and was able to lift and carry objects less than ten pounds. (Tr. 382).

State agency record reviewers at the initial and reconsideration levels found Plaintiff to have degenerative disc disease and osteoarthritis. (Tr. 70, 79, 90, 100). His impairments were considered under listings 1.02 for major joint dysfunction, 1.04 for spine disorders, and 14.09 for inflammatory arthritis. *Id*. Initially it was opined he has a residual functional capacity (RFC) to lift and/or carry ten pounds occasionally and frequently; stand and/or walk for a total of two hours; sit for a total of about six hours in an eight hour workday; a cane is required for all standing and prolonged walking; he can never climb ladders, ropes, or ladders; never kneel or crawl; occasionally climb ramps or stairs; and occasionally balance, stoop, and crouch. (Tr. 71-72, 80-81). On reconsideration, it was opined Plaintiff can lift and/or carry ten pounds occasionally and twenty pounds frequently; stand and/or walk for a total of two hours; sit for a total of about six hours in an eight hour workday; never climb ladders, ropes, or scaffolds; and

occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (Tr. 92, 102).

Plaintiff was diagnosed with lumbar canal stenosis with neurogenic claudication, L3-4 and L4-5; lumbar spondylolisthesis, L4-5; and left L5-S1 paracentral disk herniation. (Tr. 393). After failing conservative management, Plaintiff underwent a L3-L5 laminectomy with medical facetectomies and foraminotomies, TLIF, and posterior fusion L4-5 and a left L5-S1 discectomy. (Tr. 389).

Plaintiff returned to Dr. Phookan a few weeks after the surgery. (Tr. 387). He reported feeling well, his left leg pain had resolved, and for the first time in years he had been able to bear significant weight on his left leg. *Id*. A lumbar spine x-ray revealed posterior fusion that spans the L3, L4, and L5 intervertebral disc space and mild anterolisthesis of L4 on L5. (Tr. 386). He saw his primary care physician, Dr. Renfroe in follow-up.(Tr. 438). He reported he was able to walk by himself, but he was still healing. *Id*.  Plaintiff's neurologist completed a form two months after surgery documenting that Plaintiff continues to be totally disabled indefinitely. (Tr. 403).

Three months after surgery Plaintiff was instructed to start weaning off hydrocodone. (Tr. 436). He continued to undergo withdrawal from opiates. (Tr. 430, 433). He noted Flexeril made him tired yet unable to sleep. *Id*. He was still having some back pain, chronic neck pain, stiffness, and soreness. *Id*. He did not want to move due to his back and neck pain. *Id*. He had persistent pain in the left buttocks/hip, and persistent neck pain with a grinding sensation and tight muscles. (Tr. 431). A new lumbar spine x-ray was unchanged from the prior exam showing fusion at L4-5 with anterior listhesis. (Tr. 452). He told Dr. Phookan he had a little bit of pain in the left upper gluteal region around the sacroiliac joint area. (Tr. 459). He was still wearing the LSO brace for comfort, but was told he could wean off it if he wanted. *Id*.

9

Plaintiff continued to attend PT. (Tr. 424). He noted increased level of activity and improved level of ambulation. *Id*. He still had some back pain when riding in the car, and had three episodes of severe neck pain. *Id*. He was taking Tylenol 3 for his pain. *Id*. He was treated for opioid dependence with withdrawal. (Tr. 425). He was started on gabapentin, to reduce the need for Tylenol #3. *Id*. He had increased pain level for a couple weeks, and stated that he was unable to move and had decreased level of activity. (Tr. 421). He reported swelling in his back and neck as well. *Id*. Plaintiff returned to Dr. Renfroe stating that his neck is still spasming, tingling, and causing pain. (Tr. 419). He had been referred to water therapy to promote muscle relaxation. *Id*. He had recently had four days when he needed to stay on the couch, and on other days he was able to get out of the house and go to the grocery store. *Id*. He had pain when riding in a car, but his goal was to drive again. *Id*. His medications were continued. (Tr. 420). At his next follow-up, Plaintiff reported he had constant nerve tingle that was worse with lying down or sitting up all the time, as well as decreased mobility, but some slow improvement. (Tr. 417). He did note that his level of function had improved with tramadol. *Id*. He was continued on diclofenac and tramadol, and his gabapentin was increased. (Tr. 418).

Plaintiff returned to Dr. Renfroe for follow up. (Tr. 414). He had been having problems with his insurance as they did not pay for his aquatherapy. *Id*. He was having pain in his low back and neck. *Id*. He could not get comfortable in bed, and was unable to stand and help with dishes or fold laundry. *Id*. On examination there was increased tenderness to palpation over the midline and paraspinal musculature over the lumbar spine. (Tr. 415). He was instructed to stop Doxepin, continue diclofenac and gabapentin, start tramadol, cyclobenzaprine, duloxetine, and acetaminophen-codeine. *Id*. Plaintiff told Dr. Renfroe at his next visit he was doing better

10

regarding his pain management with improved level of function. (Tr. 411). He found good relief with the combination of diclofenac four times a day and a muscle relaxer twice a day. *Id*. He did note he was sleeping more, but he was ok with that. *Id*. He had not had muscle spasms since he was on the muscle relaxer. *Id*. He also felt the PT was helping with increased mobility. *Id*.

Plaintiff saw Dr. Renfroe for his continuing neck and middle back pain and asked for another PT referral. (Tr. 408). He reported being able to go to the grocery store; increased ambulation; able to do some simple housework, but not on a consistent basis; and he had increased neck pain in the afternoons. *Id*. Physical examination was normal. (Tr. 409). Plaintiff was continued on diclofenac, gabapentin, cyclobenzaprine, duloxetine, and hydroxyzine. *Id*.

At the hearing, Plaintiff testified he had not driven since the alleged onset date, except one time three weeks prior to take his wife to the ER. (Tr. 43). He does not feel safe driving because of the lack of rotation in his neck and lack of response time. (Tr. 44). He feels the medication is effective to an extent. (Tr.  46). Some days it works, some days it does not. *Id*. He had side effects from his medications including moodiness (changing from happy to depressed to angry). (Tr. 47). He last went to PT in December 2019, but his insurance refused to pay for any more after that. (Tr. 48). He does his own at home exercises. *Id*. He walks with a cane when he has to walk more than two blocks. *Id*. He has been put on anxiety medication. (Tr. 49). He sometimes has a hard time doing simple tasks, like getting dressed. (Tr. 50). He does not do any chores at home, his wife and children do all the cooking, dusting, and sweeping. (Tr. 51). If he is having a good day he occasionally helps dry dishes or fold clothes. *Id*. He sometimes goes to the grocery with his wife, and can walk for a little while, then has to lean on the cart, but if the cart is too full he cannot push it and has to go sit at the front of the store until his wife is finished shopping. (Tr.

11

52). His wife has to help him shower and he has a safety bar in the shower, but he cannot reach down to clean his feet. (Tr. 56). About fifteen days out of thirty he is having a bad day where he cannot help with any of the small chores. *Id*.

The ALJ asked the vocational expert (VE) to consider an individual of Plaintiff's age, education, and past work experience. (Tr. 60). In the first hypothetical, the ALJ asked the VE to assume this individual could perform work at the light exertional level; can stand and/or walk for two hours and can sit for six hours out of an eight hour workday; can occasionally climb stairs or ramps, balance, stoop, and kneel or crouch; can never climb ladders, ropes, or scaffolds, or crawl. (Tr. 60-61). The VE testified this individual could not perform any of the past work but could do work as a sorter, assembler, or inspector. (Tr. 61). If the individual needed a cane to ambulate more than fifty feet, this would not impact the availability of those jobs. *Id*. If the work needed to be learned in thirty days or less with simple, routine tasks, this would also not impact those jobs. *Id*. Employees may be off task no more than ten percent of the day. *Id*. Most employers will tolerate one to two absences in a month, but not on a consistent basis. (Tr. 62). If an individual needs more frequent or longer breaks than the normally scheduled ones, there would be no jobs. *Id*. If the range of motion of the neck with inability to look up, down, or side to side, there would be no jobs. (Tr. 63).

In support of remand, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.  Plaintiff contends that the ALJ focused on statements by Plaintiff that he was was doing well and made improvements.  Plaintiff asserts that his pain and limited mobility waxed and waned and that the ALJ ignored that he had episodes of decreased ability. However, Plaintiff relies almost exclusively on his own subjective complaints, which are not supported by

objective evidence.

Judicial review of the ALJ's decision rests on whether substantial evidence supports the RFC finding, which represents the most a claimant can do and takes all relevant evidence into account, including objective medical evidence, treatment, physicians' opinions and observations, and Plaintiff's own statements about his limitations. 20 C.F.R. § 404.1545; *Diaz v. Chater*, 55 F.3d 300, 306, n.2 (7th Cir. 1995). "The ALJ [need] only . . . include limitations in [the] RFC determination that [are] supported by the medical evidence and that the ALJ [finds] to be credible." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) (citing *Simila v. Astrue*, 573 F.3d 503, 520-21 (7th Cir. 2009)). It is the ALJ's prerogative to formulate the RFC based on the medical and non-medical evidence as a whole. 20 C.F.R. §§ 404.1545(a)(1), (3), 404.1546(c); *Diaz*, 55 F.3d at 306 n.2. Accordingly, the ALJ is tasked with weighing evidence, resolving conflicts in the record, and deciding issues of credibility, and the Court will not substitute its own judgment if the ALJ's findings are supported by substantial evidence.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Here, the ALJ found that Plaintiff could perform light work, except that Plaintiff could stand and walk for only two hours in an eight-hour workday, could sit for up to six hours in a workday, could balance, stoop, kneel, crouch, and climb stairs or ramps occasionally, and could not crawl or climb ladders, ropes, or scaffolds. (Tr. 19). The ALJ acknowledged Plaintiff's testimony that his medication was somewhat effective, working on some days but not others, and that he had taken narcotic pain medication for about two months following surgery in 2019. (Tr. 20-21, Tr. 46). The ALJ also noted that Plaintiff had been referred for physical therapy for his neck and back pain and had continued to perform neck and back exercises after he stopped

attending physical therapy in January 2020, when it was no longer covered by his insurance. (Tr. 20, Tr. 47-48). The ALJ also considered Plaintiff's testimony that he used a cane at times and that he could walk without the cane for about two blocks. (Tr. 20, Tr. 48).

Contrary to Plaintiff's argument, the ALJ also considered Plaintiff's testimony regarding his neck pain. The ALJ noted that Plaintiff testified that he generally did not drive because he did not feel safe driving due to issues with rotation of his neck and back, although Plaintiff acknowledged that no medical source had advised him against driving. (Tr. 20, Tr. 44). The ALJ also noted Plaintiff's statement that he had trouble turning his head to the side and that he helped with household chores on "good days" but often needed assistance. (Tr. 20, Tr. 44, 51). The ALJ also acknowledged Plaintiff's statements to consultative examiner, Dr. French, that he had problems moving his neck. (Tr. 20, Tr. 380).

Despite Plaintiff's testimony regarding the limitations caused by his neck and back impairments, the ALJ explained that clinical records did not document significant functional deficits beyond those accounted for in the RFC for a range of light work. (Tr. 21). The ALJ acknowledged that, at the March 2019 consultative examination with Dr. French, Plaintiff was using a cane, required assistance getting on and off the examination table, and turned his full body due to his alleged neck pain and stiffness. (Tr. 22, Tr. 381). At that examination, Plaintiff exhibited a reduced range of motion in his cervical and lumbar spine and left shoulder, as well as an antalgic gait, and tremors, and spasticity, but he nevertheless had a negative straight leg raise test, full strength (5/5), normal sensation, full grip strength, normal dexterity, a normal station, and no edema or muscle atrophy. (Tr. 22, Tr. 379, 381). The ALJ noted that although Plaintiff testified that he used a cane, his medical records showed that, in November 2018, he reported he

14

had stopped using a quad cane in July of that year and that the consultative examination was the only instance in the record in which Plaintiff was observed to be using an assistive device. (Tr. 21, Tr. 363, 381). The ALJ also noted that Plaintiff's presentation at the consultative examination was not consistent with his presentation throughout  the treatment record. (Tr. 23).

Although Plaintiff recites various subjective complaints from his testimony and the treatment record, he fails to point to significant objective findings suggesting that he was more limited than the RFC determination. Aside from the consultative examination results, the only objective finding that Plaintiff cites is one positive finding of paraspinal tenderness to palpation. (Tr. 415). The ALJ, however, cited numerous examples of objective physical examination findings indicating minimal limitations. For example, in July 2018, Plaintiff went to the emergency department for sciatic pain, but physical examination results showed normal alignment, a normal straight leg raise test, normal musculoskeletal range of motion, normal sensation and motor function, and no swelling or deformity. (Tr. 21, Tr. 347). Notably, there was no indication of neck pain or range of motion restrictions. (Tr. 347).

Likewise, at an examination with primary care provider, Dr. Renfroe, regarding his back pain in October 2018, Plaintiff's neck was supple and non-tender and he exhibited no spinal tenderness, swelling, or deformity. (Tr 21, Tr. 449). His gait and stance were normal, his motor strength was normal, and he had normal sensation. (Tr. 21, Tr. 449). Dr. Renfroe referred Plaintiff to physical therapy and, after completing a course of physical therapy in December 2018, Plaintiff was noted to have decreased pain and increased mobility. (Tr. 21, Tr. 360). When Dr. Renfroe examined Plaintiff again in January 2019, although Plaintiff reported continued low back pain, his neck was supple, and he exhibited no motor or sensory deficits and normal reflexes. (Tr. 21,

Tr. 441-42).

Plaintiff then saw a neurologist, Dr. Phookan, in February 2019 for his back pain. (Tr. 396). Dr. Phookan's examination results showed that Plaintiff was in no acute distress, he exhibited a supple and non-tender neck, had no swelling of the extremities, and had full motor strength, normal sensation, normal reflexes, and negative straight leg raise testing, although he did have an antalgic gait. (Tr. 22, Tr. 396).

Due to his continued complaints of pain, Plaintiff underwent a decompressive lumbar laminectomy in March 2019. (Tr. 397, 438). At a postoperative visit with Dr. Phookan two weeks after the surgery, Plaintiff said he was feeling well, that his left leg pain had resolved, and that he was able to bear significant weight on his left leg for the first time in years. (Tr. 22, Tr. 387). Several weeks after the surgery, in April 2019, Dr. Renfroe observed that Plaintiff was walking by himself even though he was still healing; on examination, Plaintiff's back was non-tender and he had no edema. (Tr. 22, Tr. 438). When Plaintiff returned to Dr. Phookan in July 2019, Plaintiff reported only a small amount of pain in the left upper gluteal region, but no distal leg pain and no significant midline back pain. (Tr. 22, Tr. 455). Plaintiff continued to wear a back brace for comfort, but Dr. Phookan said that he could begin to wean from the brace. (Tr. 22, Tr. 455). Dr. Phookan noted that further follow up would be as-needed, and there is no indication that Plaintiff returned to Dr. Phookan. (Tr. 22, Tr. 455).

As the ALJ explained, Plaintiff's physical examination results throughout the rest of 2019 and 2020 generally continued to show unremarkable findings, with no motor or sensory deficits, normal straight leg raise testing, and no back tenderness. (Tr. 22, 408-09 (non-tender back, no misalignment or palpable defect), 411-12, 414-15 (some back tenderness noted), 417-18 (back

non-tender, no focal abnormalities), 419-20 (back non-tender, no focal abnormalities), 421-22

(back non-tender), 424, 427-28 (supple neck), 431 (supple neck), 433-34, 436 (supple neck),

443-44). During this period, Plaintiff reported improvement at various times, stating, for example,

in November 2019 that physical therapy was helping and had increased his mobility and that he

had found good pain relief with his medications and an improved level of functioning. (Tr. 22, Tr.

411). In January 2020, Plaintiff reported that he was no longer wearing a brace for his back. (Tr.

22, Tr. 408). He was capable of increased ambulation and could go to the grocery store and do

some simple housework intermittently, although he experienced increased neck pain in the

afternoon. (Tr. 22, Tr. 408). When Plaintiff saw Dr. Renfroe in February 2020 for flu-like

symptoms, he did not report any musculoskeletal complaints. (Tr. 22, Tr. 405-06).

Clearly, the ALJ acknowledged Plaintiff's subjective complaints of waxing and waning

symptoms, but correctly noted that the objective evidence of record did not support Plaintiff's

allegations that he was more functionally limited than provided for in the RFC assessment.

Additionally, the ALJ also relied on State agency medical consultant Dr. Brill's prior

administrative medical finding. (Tr. 23, Tr. 91-93, 101-03). At the reconsideration level, after

Plaintiff's lumbar spine surgery, Dr. Brill found that Plaintiff could perform light work but could

stand or walk for two hours in an eight-hour workday and sit for up to six hours in an eight-hour

workday, with additional postural limitations, consistent with the RFC assessment. (Tr. 23, Tr.

91-93, 101-03). The ALJ found Dr. Brill's opinion persuasive, noting that it was consistent with

the evidence of record reflecting mostly normal examination findings. Tr. 23; 20 C.F.R. §

404.1520c(c)(2). The regulations expressly note that "Federal or State agency medical or

psychological consultants are highly qualified and experts in Social Security disability

evaluation." 20 C.F.R. § 404.1513a(b)(1). Moreover, Dr. Brill's prior administrative medical finding was based upon a review of the record through April 9, 2019, which included Plaintiff's March 2019 laminectomy. Dr. Brill's assessment, therefore, provided further support for the ALJ's RFC assessment. *See Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) (ALJ was justified in relying on opinion of State agency medical consultant).

Noting a handful of instances in which Plaintiff complained of neck pain to Dr. Renfroe, Plaintiff argues that the ALJ did not adequately account for his cervical spine impairment or for the combined impact of all his impairments. (Tr. 408, 414, 419, 421, 424, 431). However, the objective physical examination findings at those appointments fail to demonstrate any abnormal findings with respect to Plaintiff's neck. (Tr. 408-09, 414-15, 419-20, 424-25, 431). As the ALJ correctly noted, the clinical evidence did not demonstrate the disabling symptomatology that Plaintiff alleged, and Plaintiff cites no objective evidence, aside from the consultative examination, to support his statements that he had significant limitations in his neck range of motion. (Tr. 21-23). "The ALJ's failure to address [certain] specific findings . . . does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). As discussed above, the ALJ reasonably concluded that the consultative examination results and, consequently, Dr. French's opinion, were not reliable indications of Plaintiff's capabilities because they were inconsistent with the other record evidence showing generally normal physical examination findings and no limitations on Plaintiff's neck movement. (Tr. 23, Tr. 379). *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (it is the ALJ's role to resolve conflicts in the evidence of record).

Plaintiff also argues that the ALJ did not properly evaluate a May 2019 statement from Goodman Campbell Brain and Spine stating that Plaintiff was indefinitely "totally disabled." (Tr. 403). The ALJ found this statement to be unpersuasive, noting that it was only temporary, and did not provide specific functional limitations or provide any supportive clinical findings or diagnostic imaging. (Tr. 23). As the Commissioner argues, the ALJ's evaluation of this statement was in line with the regulatory requirements concerning such statements. The applicable regulations provide that statements "that you are or are not disabled" or not "able to work" are inherently neither valuable nor persuasive. 20 C.F.R. § 404.1520b(c)(3). Under those regulations, the ALJ was not even required to explain how this statement was considered or to address it at all. 20 C.F.R. § 404.1520b(c). Nevertheless, the ALJ provided Plaintiff with an explanation as to why the statement was unpersuasive.

"[A]n ALJ need only 'minimally articulate' his or her justification for rejecting or accepting specific evidence of a disability." *Rice*, 384 F.3d at 371 (quoting *Stewart v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). Here, the ALJ adequately explained her reasoning for the RFC finding, citing substantial objective evidence of record as well as Dr. Brill's expert opinion in support of the RFC determination. Because substantial evidence supports the RFC finding, remand is not warranted.

Plaintiff also argues that the ALJ did not properly analyze the consistency of his subjective complaints with the evidence of record, alleging that the ALJ did not specifically discuss the factors set forth in Social Security Ruling (SSR) 16-3p. As the Commissioner points out, however, the absence of an explicit enumeration of those factors does not mean that the ALJ did not properly consider Plaintiff's subjective statements. The ALJ explained that, although

19

treatment records confirmed Plaintiff's complaints of pain, the records did not substantiate

functional deficits beyond what was accounted for in the RFC. (Tr. 21). The ALJ then discussed

the facts relevant to the analysis of Plaintiff's subjective complaints. For example, the ALJ noted

that, although Plaintiff had reported using a cane, the objective evidence did not corroborate

ongoing cane usage. (Tr. 21, Tr. 363, 381); SSR 16-3p (ALJ may consider measures other than

treatment that an individual uses to relieve pain or other symptoms). The ALJ also noted that

Plaintiff's mobility improved following his lumbar spine laminectomy. (Tr. 21,Tr. 387, 408, 411);

20 C.F.R. § 404.1529(c)(3)(v) (ALJ may consider the treatment an individual has received to

alleviate pain); SSR 16-3p (relevant evidence includes a record of any treatment and its success or

failure). The ALJ also considered Plaintiff's testimony, acknowledging his statements that he did

not like to drive due to concerns with turning his head, that he could help with household chores

on good days but still needed assistance, that he could walk around a store to shop but had to lean

on a grocery cart, and that he could hardly do anything for himself anymore and had trouble

standing due to his back pain. (Tr. 20, Tr. 51-53); 20 C.F.R. § 404.1529(c)(3)(i).

However, the ALJ explained throughout the decision that the objective medical evidence,

which repeatedly showed benign physical examination results, did not support the degree of

limitation that Plaintiff alleges. *See* Tr. 21-23 (discussing objective evidence and noting

repeatedly that the evidence did not show functional deficits); 20 C.F.R. § 404.1529(c)(2)

("Objective medical evidence . . . is a useful indicator to assist us in making reasonable

conclusions about the intensity and persistence of your symptoms and the effect those symptoms,

such as pain, may have on your ability to work."); SSR 16-3p ("We must consider whether an

individual's statements about the intensity, persistence, and limiting effects of his or her

symptoms are consistent with the medical signs and laboratory findings of record.").

Plaintiff argues that the ALJ improperly assessed his credibility by noting that Plaintiff had stopped taking pain medications at times and that he smoked marijuana for pain relief. (Tr. 21). There is no indication, however, that the ALJ held Plaintiff's admitted marijuana use against him; rather, the ALJ merely observed that marijuana was among the ways that Plaintiff managed his pain, as contemplated by 20 C.F.R. § 404.1529(c)(3). And Plaintiff's statement that "there were no times [he] was not taking pain medications" is incorrect, as the ALJ cited an October 2018 appointment note in which Plaintiff told Dr. Renfroe that he was not taking any oral medication and that he smoked marijuana for pain relief. (Tr. 448). In any event, these observations by the ALJ were only a small part of the ALJ's overall analysis of Plaintiff's subjective complaints compared to objective evidence of record.

Although Plaintiff argues that the ALJ failed to create an "accurate and logical bridge" between the evidence and her determination that Plaintiff's subjective complaints were not totally consistent with the record, the ALJ clearly stated that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant." (Tr. 20). Thus, although Plaintiff had some limitations, as reflected in the RFC, the objective evidence, which was discussed by the ALJ, did not support the degree of functional limitations alleged. This was more than sufficient to meet the requirement that the ALJ "minimally articulate" her reasoning. *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012) ([W]e require only that the ALJ 'minimally articulate' his reasoning."). Therefore, the decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: November 22, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court